UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                    :
                                             :
                                             :
            - against -                      :    **REPORT AND RECOMMENDATION**
                                             :
YICK MAN MUI,                                :    No. 95 Crim. 0766 (SJ) (VMS)
                                             :
                  Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court, on referral from the Honorable Sterling Johnson, Jr. are Defendant

Yick Man Mui's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and motion

for the appointment of counsel for purposes of litigating his motion for compassionate release.

I.      **OVERVIEW**

On October 30, 1996, following a jury trial for his involvement in the robbery,

kidnapping and murder of Tak L. Chung in July 1993, Defendant was convicted of nine counts:

   (i)     Count Three for conspiracy to interfere with commerce by robbery, in violation of
           18 U.S.C. § 1951;

   (ii)    Count Four for interference with commerce by robbery, in violation of 18 U.S.C.
           § 1951;

   (iii)   Count Five for conspiracy to travel in interstate commerce in aid of racketeering,
           in violation of 18 U.S.C. § 371;

   (iv)    Count Six for travel in interstate commerce in aid of racketeering, in violation of
           18 U.S.C. 1952(a)(2)(B);

   (v)     Count Seven for conspiracy to kidnap, in violation of 18 U.S.C. § 1959(a)(5);

   (vi)    Count Eight for kidnapping, in violation of 18 U.S.C. § 1959(a)(1);

   (vii)   Count Nine for conspiracy to commit murder, in violation of 18 U.S.C. §
           1959(a)(5);

   (viii)  Count Ten for murder, in violation of 18 U.S.C. § 1959(a)(1); and

1

(ix)    Count Eleven for use of a firearm during a crime of violence, in violation of 18
U.S.C. § 924(c)(1).

On April 10, 1997, the Court sentenced Defendant to imprisonment for a term of life plus

five years, to be followed by five years of supervised release.  For Counts Eight and Ten,

Defendant was sentenced to life imprisonment.  For Counts Three and Four, Defendant was

sentenced to 240 months' imprisonment.  For Counts Seven and Nine, Defendant was sentenced

to 120 months' imprisonment.  For Counts Five, Six and Eleven, Defendant was sentenced to 60

months' imprisonment.  The terms of imprisonment imposed on Counts Three through Ten were

to run concurrent to each other and consecutive to the term of imprisonment imposed on Count

Eleven, for a total imprisonment term of life plus five years.  For Counts Three, Four, Five,

Seven, Nine and Eleven, the Court imposed a supervised release term of three years.  For Counts

Six, Eight and Ten, the Court imposed a supervised release term of five years.  The supervised

release terms were to run concurrent to each other, for a total supervised release term of five

years.  A special assessment of $450.00 ($50.00 per count) was imposed.  See ECF Nos. 81-82.

Defendant appealed, and the Second Circuit affirmed his conviction.  See United States v.

Mui, 159 F.3d 1329 (2d Cir. 1998).

Defendant argues that his age and underlying health issues, the conditions of his

incarceration at FCI Cumberland and the global COVID-19 pandemic constitute "extraordinary

and compelling reasons" to reduce his sentence and order his immediate release into a period of

home confinement.  See generally ECF No. 122.  Defendant is currently 62 years old, suffers

from osteoporosis and hyperlipidemia, has a body mass index (BMI) of 27 and has had his

thyroid removed.  See ECF No. 124 at 2.  The Government opposed Defendant's motion on the

grounds that 1) his age and medical conditions do not fall within the high-risk category under the

2

Centers for Disease Control and Prevention (CDC") guidelines, 2) Defendant recovered from COVID-19 due to the effective treatment he received at FCI Cumberland, and 3) the seriousness of Defendant's crimes outweigh any reasons for his release. See ECF No. 125, generally. In reply, Defendant expanded his list of claimed ailments to include "hypertension, [] high blood pressure, [] pre-diabe[tes], [] obes[ity], [and] vitamin D def[iciency]" and reiterated that the seriousness of his medical conditions, in combination with the conditions of FCI Cumberland, place him at a heightened risk of severe injury or death from the coronavirus. See ECF No. 129 at 2-3; id., passim. According to Defendant, his recent experience with COVID-19 should not preclude him from the relief he seeks because there remains a risk of reinfection. See id. at 4-5. Defendant argued that he is no longer a danger to the community because he has a good prison record and has focused on rehabilitation. See id. at 10-11. In support of these arguments, Defendant retained Jack Donson, founder of My Federal Prison Consultant, to opine by affidavit on Defendant's adjustment and rehabilitation from a correctional treatment perspective. See ECF No. 131 at 1-2; id., passim. In numerous supplemental filings which the Court has reviewed, Defendant states that he suffers various long-term symptoms and side effects from his COVID-19 infection including fatigue, aches, pains, rashes and bumps, which Defendant complains the correctional system has failed to diagnose or treat. See ECF Nos. 130, 132-133. Defendant also moved for the appointment of counsel, in connection with his reply, for the purpose of litigating his motion for compassionate release. See ECF No. 128.

For the foregoing reasons, this Court respectfully recommends that the motions be denied.

## II.    DISCUSSION

### A.    Motion For Appointment of Counsel

In criminal matters, the right to appointed counsel "extends to the first appeal of right, and no further."  Starkes v. United States, No. 20 Civ. 0265 (LGS), 2020 WL 230944, at *1 (S.D.N.Y. Jan. 15, 2020) (quoting Pennsylvania v. Finley, 471 U.S. 551, 555 (1987)); see Johnson v. Avery, 393 U.S. 483, 488 (1969) (noting that there is no "general obligation" for courts to "appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief").  With respect to other post-conviction proceedings, including motions for compassionate release, district courts have discretion to appoint counsel.  See 18 U.S.C. § 3006A(a)(2) (providing that representation may be provided "for any financially eligible person" when "the interests of justice so require"); Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988) (noting that trial judges have broad discretion in deciding whether to appoint counsel); United States v. Hilliard, No. 17 Cr. 35 (VLB), 2021 WL 242538, at *2 n.1 (S.D.N.Y. Jan. 25, 2021) (noting that appointment of counsel is within district court's discretion and denying defendant prisoner's request for appointment of counsel).

In deciding whether to exercise discretion to appoint counsel in both criminal and civil matters, courts in the Second Circuit weigh factors set forth in Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1985).  See, e.g., United States v. Piña, No. 01 Cr. 619 (VM), 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021) (applying Hodge to determine motion for appointment of counsel); Starkes, 2020 WL 230944, at *2 (same).  Hodge dictates that courts should first consider whether the indigent's position seems likely to be of substance, i.e., that his claims are likely to succeed on the merits.  See Hodge, 802 F.2d at 61; Parks v. Smith, 505 F. App'x 42, 43 (2d Cir. 2012) ("In consideration a motion to appoint counsel, a district court should first determine whether the

4

indigent's position is likely to be of substance.") (citation & internal quotation marks omitted); Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003) (citing Hodge to reiterate that courts must first determine whether the movant is likely to succeed on the merits of the claim when determining whether appointment of counsel is warranted). If the indigent's claim meets this threshold, courts should then consider other factors, including the indigent's ability to investigate the crucial facts and present the case, and the complexity of the legal issues involved. See Hodge, 802 F.2d at 61-62.

Considering the Hodge factors, this Court respectfully recommends that Defendant's motion for appointment of counsel to litigate his compassionate release motion be denied. As discussed below, Defendant does not establish "extraordinary and compelling" reasons warranting his early release from prison. See, e.g., United States v. Myers, 524 F. App'x 758, 759 (2d Cir. 2013) ("In this case, where it was readily ascertainable from the record that Appellant was ineligible for a reduction in sentence, the court did not abuse its discretion by denying his motion for appointment of counsel."); United States v. Lewis, No. 17 Cr. 28 (FPG), 2021 WL 790311, at *1 (W.D.N.Y. Mar. 2, 2021) (denying motion for appointment of counsel because defendant's underlying motion for compassionate release lacked merit) (citation omitted); Lopez-Pena v. United States, No. 05 Cr. 191 (DC), 2020 WL 4450892, at *1 (S.D.N.Y. Aug. 3, 2020) (same). Defendant therefore does not meet the threshold requirement that would require this Court to consider whether he satisfies other criteria for appointment of counsel.

Defendant's motion for appointment of counsel in connection with his motion for compassionate release is also unwarranted because Defendant's moving papers, reply papers and supplemental filings demonstrate that Defendant can write clearly, understands the factual and legal arguments that are relevant to his motion, and has sufficient resources to handle the motion.

5

<u>See generally</u> ECF Nos. 122, 129, 132-133.  Indeed, Defendant's submissions coherently present the relevant legal standard for a motion for compassionate release and cite to legal authority in support of his position, including recent decisions altering the controlling caselaw.  Defendant further cites to the CDC guidelines and statistics involving the Federal Bureau of Prisons' ("BOP") response to the outbreak of COVID-19 in prisons.  He describes in detail his alleged medical conditions, experience with COVID-19, rehabilitation efforts in prison and plans after release.  This Court thus finds that Defendant is knowledgeable and capable of handling his motion for compassionate release.  <u>See, e.g.</u>, <u>Lenhard v. Colographics of Rochester</u>, No. 15 Civ. 6166 (JWF), 2016 WL 4661377, at *2 (W.D.N.Y. Sept. 6, 2016) (denying appointment of counsel where plaintiff was sufficiently knowledgeable and equipped to handle the litigation).

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for appointment of counsel be denied.

### B.    Motion For Compassionate Release

Under the First Step Act, a defendant is permitted to make a motion to reduce his sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Where this exhaustion requirement is satisfied, a court may reduce the defendant's sentence if the defendant demonstrates that "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  <u>Id.</u> § 3582(c)(1)(A)(i); <u>United States v. Tranese</u>, No. 17 Cr. 559-2 (CBA), 2021 WL 25371, at *1 (E.D.N.Y. Jan. 4, 2021) ("[T]he defendant bears the burden of demonstrating his eligibility for compassionate release.").

The Government contends "[t]he policy statement applicable to § 3582(c)(1)(A) motions [] appears at § 1B1.13 of the United States Sentencing Guidelines . . . ." and describes four such extraordinary and compelling reasons: (i) the defendant has a terminal illness or a serious health condition that substantially diminishes his ability to provide self-care; (ii) the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health due to the aging process, and has served at least 10 years of his term of imprisonment; (iii) the defendant's family circumstances have changed; or (iv) an extraordinary and compelling reason other than or in combination with one of the above exists.  See ECF No. 125 at 3 (citing U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(1)(A) & cmt. n.1(A)-(D) (U.S. Sentencing Comm'n 2018)).  As Defendant observes, the policy statement at § 1B1.13 applies only "[u]pon the motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A) . . ." "[a]nd this is precisely the requirement that the First Step Act expressly removed."  United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).  The Second, Fourth, Sixth and Seventh Circuits have found that where "a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it."  Id. at 236; United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).  District courts are therefore free "to consider the full slate of extraordinary and compelling reasons" that defendants may present to support compassionate release, and "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits [its] discretion."  Brooker, 976 F.3d at 237.  Although no longer binding, courts may still look to § 1B1.13 for guidance.  See United States v. Corley, 18 Cr. 454-3 (KPF), 2021 WL 242451, at *3 (S.D.N.Y. Jan. 25, 2021); United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  In this analysis, "[r]ehabilitation . . . alone shall not be

considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-238 (quoting 28 U.S.C. § 994(t)) (internal quotation marks omitted).

In determining whether an extraordinary and compelling reason exists, the court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." United States v. Daugerdas, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (citation & internal quotation marks omitted); see Tranese, 2021 WL 25371, at *1 (denying renewed motion for compassionate release because, even assuming there are extraordinary and compelling circumstances, Section 3553(a) factors weigh in favor of the defendant's continued detention); United States v. Elliott, No. 17 Cr. 128 (ARR), 2020 WL 4381810, at *5 (E.D.N.Y. July 31, 2020) ("Even assuming that [the defendant] did show that extraordinary and compelling reasons were present in this case, the § 3553(a) factors militate against his release."). Again, the Court may look to, though is not "itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" Corley, 2021 U.S. Dist. LEXIS 13274, at *9 (quoting U.S.S.G. § 1B1.13(2)).

### 1.    Exhaustion

Defendant alleges, and the Government does not dispute, that he has satisfied the First Step Act's exhaustion requirement. Defendant timely submitted his request for compassionate release to the Warden of FCI Cumberland. See ECF No. 122 at 10-13. The Warden received

Defendant's request four days later.  See id. at 15.  Three days later, the Warden responded by

denying Defendant's request.  See id.  at 15.  Defendant made his motion for compassionate

release more than 30 days after the Warden's receipt of his request for that relief.  See generally,

ECF No. 122.  The Court may proceed to the merits of Defendant's motion.

### 2.    Extraordinary And Compelling Reasons

As noted by the Warden, Defendant's present condition does not meet the first three

categories of extraordinary and compelling reasons for compassionate release identified in

Application Note 1 to § 1B1.13 of the Sentencing Guidelines.  See ECF No. 122 at 15.

Defendant does not contend that he is unable to provide self-care within FCI Cumberland; he is

not 65 or older; and he does not rely on a change in family circumstance to seek compassionate

release.  See id.  Although Section 1B1.13's categories of extraordinary and compelling reasons

are not binding and the Court does not treat them as such, Defendant's failure to meet certain of

these categories has some persuasive value.

Defendant argues that "extraordinary and compelling reasons" supporting compassionate

release include:  (1) his age and medical conditions, which he contend place him at heightened

risk of serious complications were he to become reinfected with COVID-19 or infected with a

variant, and (2) the fact that his incarceration at FCI Cumberland renders him especially

vulnerable.  To start, Defendant identifies medical conditions that he contends place him at

heightened risk of serious complications if he were to become infected with COVID-19:

osteoporosis, post-surgical hypothyroidism, a BMI of 27 (which he characterizes on reply as

obesity), hypertension, high blood pressure, vitamin D deficiency, pre-diabetes, and

hyperlipidemia.[1]  See ECF Nos. 122, 129.  According to the CDC, people of any age who have certain underlying medical conditions may be at a higher risk for severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/index.html (updated Mar. 15, 2021). Osteoporosis, hypothyroidism, vitamin D deficiency, pre-diabetes, and hyperlipidemia are not risk factors identified by the CDC.  See People with Certain Medical Conditions, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra- precautions/people-with-medical-conditions.html (updated Mar. 15, 2021).  Defendant's BMI of 27 is also below the CDC's "obesity" risk factor, which it defines as a BMI of 30 or above.  See id.; United States v. Goldberg, No. 13 Cr. 120 (JMA), 2020 WL 6273947, at *3 (E.D.N.Y. Oct. 26, 2020) (denying motion for compassionate release for defendant with obesity).  The CDC also reports that there is an association in cohort and case-control studies between adults who are overweight, i.e., a BMI over 25 and less than 30, and an increased risk for severe illness from COVID-19.  See Evidence Table, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (updated May 13, 2021).

Courts have found that defendants with similar conditions do not meet the "extraordinary and compelling reasons" threshold.  See, e.g., United States v. Sturgis, No. 6:10 Cr. 6022 (CJS) (MWP), 2020 WL 7063359, at *5 (W.D.N.Y.  Nov. 24, 2020) (finding that defendant's obesity, hypertension and hypothyroidism did not constitute extraordinary and compelling reasons warranting sentence reduction); United States v. Figueroa, No. 91 Cr. 518, 2020 WL 6485098, at *3 (E.D. Pa. Nov. 4, 2020) (finding that 61-year-old defendant's hyperthyroidism, obesity and

---

[1] Defendant's BOP medical records largely confirm Defendant's health issues, apart from his claim of obesity.  See, e.g., ECF No. 125-2 at 57-65.

10

high blood pressure fell short of presenting extraordinary and compelling reasons for his

release); United States v. Lara-Villaruya, No. 18 Cr. 3425 (GPC), 2020 WL 6395876, at *4 (S.D.

Cal. Nov. 2, 2020) (noting that defendant's osteoporosis does not put him at a higher risk of

serious health consequences from COVID-19); United States v. Myrick, No. 12 Cr. 385 (ARR),

2020 WL 6128943, at *3 (E.D.N.Y. Oct. 19, 2020) (finding that defendant's anemia,

hypothyroidism, and elevated blood sugar levels were not enough to constitute extraordinary and

compelling reasons for release); United States v. Santibanez, 13 Cr. 912 (RJS), 2020 WL

3642166, at *2 (S.D.N.Y. July 6, 2020) (denying compassionate release for defendant with

chronic hypertension, hyperlipidemia and hypothyroidism); United States v. Gotti, 433 F. Supp.

3d 613, 619-20 (S.D.N.Y. 2020) (denying finding of extraordinary and compelling reasons for

release for 79-year-old defendant with history of hypothyroidism, hyperlipidemia, hypertension

and other medical issues).

Defendant also contends that "Dr. [Moubarek],[2] the Chief [Medical Doctor] for FCI

Cumberland's medical department is currently the subject of numerous malpractice lawsuits"

and that "prison medical departments are notorious for providing subpar medical assistance."

See ECF No. 129 at 5.  Yet, Defendant does not show that Dr. Moubarek was negligent in his

treatment of Defendant or that FCI Cumberland's medical department historically provided

subpar medical assistance to Defendant.  See id.  Defendant also does not suggest that the BOP

has neglected his care or that he has been unable to manage his underlying medical conditions

while incarcerated.  See, e.g., United States v. Lindo, No. 15 Cr. 0854 (SHS), 2020 WL

5038766, at *1 (S.D.N.Y. Aug. 26, 2020) (denying compassionate release where defendant did

---

[2] Based on Defendant's medical records, he misspells the doctor's name as "Dr. Mumbarouk" but the correct spelling appears to be "Dr. Moubarek."  Compare ECF No. 129, passim, with, e.g., ECF No. 125-2 at 2.

not suggest that he was receiving inadequate medical treatment for an underlying preexisting health condition at the prison where he was housed); United States v. Brady, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (acknowledging the serious nature of defendant's medical conditions but denying compassionate release where conditions were stable and managed in BOP facility).

Rather, Defendant's medical records reflect that he is prescribed various medications which help regulate his medical conditions, and that his medical classification is "Care 2 (Stable, Chronic Care)." See ECF Nos. 125-2 at 57-65; 125-4. The BOP assigns each inmate in its custody a Care Level, with Level 1 requiring the least care (inmates less than 70 years of age and generally healthy) and Level 4 requiring the most care and services which are only available at a BOP Medical Referral Center. See Care Level Classification for Medical and Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance, May 2019, p. 2, at https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited May 4, 2021). Care Level 2 inmates are described by the BOP as "stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." Id. Defendant's medical conditions alone are therefore insufficient to warrant a reduction in sentence.

Defendant suggests that the current state of incarceration at FCI Cumberland is extremely dangerous because it is experiencing a surge in COVID-19 cases. This Court recognizes that prison settings present unique challenges in preventing the spread of COVID-19. See United States v. Olejniczak, 464 F. Supp. 3d 483, 487-88 (W.D.N.Y. 2020) (describing the challenges

BOP has faced in stopping the spread of COVID-19 within certain facilities).  Despite these

challenges, on May 3, 2021, FCI Cumberland had only one staff member with a confirmed active

case of COVID-19; no active cases within the population of 1,154 inmates; 365 inmates and 51

staff members who had recovered from COVID-19; and no deaths attributed to COVID-19 from

either population.  See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/

coronavirus/ (last visited May 3, 2021); FCI Cumberland, Federal Bureau of Prisons,

https://bop.gov/locations/institutions/cum/ (last visited May 3, 2021).  The BOP has also

implemented a variety of safety measures aimed at mitigating the spread of the virus within

prisons, including screening and testing of inmates, quarantines and reducing movement into

facilities.  See BOP Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/

(follow "Learn how we've temporarily modified operations" hyperlink) (last updated Nov. 25,

2020).  The BOP has begun vaccinating both inmates and staff, and as of May 3, 2021, has

administered 157,855 doses systemwide, and 180 staff and 410 inmates at FCI Cumberland have

been fully inoculated as of May 3, 2021. See COVID-19 Vaccine Implementation, Federal

Bureau of Prisons, https://www.bop.gov/coronavirus/ (follow the "Learn more about

vaccinations and view individual facility stats" hyperlink) (last visited May 3, 2021); COVID-19

Vaccine Guidance, https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311

.pdf (last updated Mar. 11, 2021).  The conditions at FCI Cumberland therefore do not present

extraordinary and compelling reasons favoring compassionate release either standing alone or in

combination with Defendant's health issues.[3]

---

[3] Defendant states that he has not and does not expect to take the vaccine.  See ECF No. 129 at 7;
ECF Nos. 132-133.  This is not relevant to whether it is reasonable to consider BOP's
vaccination of many other inmates and staff as it pertains to whether the general level of
infection or re-infection risk is an extraordinary and compelling reason favoring compassionate
release.

A more challenging question is presented by the fact that, in December 2020, Defendant tested positive for COVID-19.  See ECF No. 125-2 at 1-41.  As a result, this Court recognizes that the motion is no longer primarily about the risk of severe illness from COVID-19 or the adequacy of preventive measures at FCI Cumberland.[4]  See United States v. Zubkov, No. 14 Cr. 773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020) (noting that the relevant analysis for defendant who tested positive is the "present need for medical treatment and the adequacy of the treatment that he is receiving"); United States v. Russo, No. 16 Cr. 441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (concluding that, because the defendant tested positive for COVID-19 after filing his compassionate release motion, the circumstances for resolving the motion had changed).  Instead, the relevant inquiry, as noted in Zubkov, is Defendant's present need for medical treatment and the adequacy of the response to Defendant's medical needs.  According to Defendant's medical records, as of December 31, 2020, he fully recovered from COVID-19 without any lasting side effects.  See ECF No. 125-2 at 4.  While infected with COVID-19, Defendant experienced the following symptoms: a fever of 102 degrees Fahrenheit for one day, see ECF No. 125-2 at 37, 85-86, hypoxia with difficulty breathing for approximately seven days, see id. at 14-17, 37, and possible signs of pneumonia, see id. at 32-34.  In contrast with Defendant's contention that FCI Cumberland is ill-equipped to monitor or treat COVID-19 cases, see ECF No. 129 at 5,[5] BOP medical personnel provided Defendant with medical attention

---

[4] According to the CDC, there appears to be limited evidence of reinfection.  See COVID-19 Science Update released: June 11, 2021 Edition 93, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/library/covid19/06112021_covidupdate.html (last updated June 11, 2021); Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated Feb. 13, 2021).

[5] Defendant contends that it is "morally outrageous" that a dentist and dental assistant are contributing to the prison's response efforts because they are not qualified to triage or treat

and care in response to his symptoms, see ECF No. 125-2 at 5-41.  BOP medical personnel

conducted regular exams, prescribed medications, ordered a chest x-ray, administered IV fluids,

placed Defendant on oxygen, and issued an incentive spirometer.[6]  Id.  As a result, on December

31, 2020, Defendant was able to report "how great he felt . . . that [medical staff] saved him and .

. . he no longer has any breathing issues and [] feels like he has tons of energy."  Id. at 4.  By

January 4, 2021, Defendant's COVID-19 case was noted as resolved on his medical records and

that he stated he was "totally resolved as far as the COVID goes. He stated he that he feels like

he is back to normal."  Id. at 1-3.

   Even before Defendant's COVID-19 lab test returned a positive result, FCI Cumberland

responded to Defendant as a possible vector for the spread of COVID-19 among its inmates.

Once FCI Cumberland determined that Defendant had possibly been exposed to COVID-19, he

was placed in quarantine, placed on medical hold, monitored by medical personnel, and regularly

tested for COVID-19.  See id. at 42-51.

   Defendant's recovery from COVID-19, either in isolation or combined with his medical

issues and the conditions at FCI Cumberland, does not present an extraordinary and compelling

reason to reduce his sentence.

   Defendant has also supplemented the motion record claiming that he is suffering various

long-term COVID-19 side effects or symptoms including fatigue, aches, pains, rashes and

---

persons ill with COVID-19.  See id.  From Defendant's medical records, it appears that a dentist
and dental assistant screened Defendant for COVID-19 and took Defendant's vitals, including
his temperature and pulse.  See, e.g., ECF No. 125-2 at 84-96, 104-06.  Defendant does not
specify how these individuals failed to treat his symptoms properly.

[6] An incentive spirometer is a device used to help lungs expand and recover, and to help prevent
complications such as pneumonia.  See How to Use Your Incentive Spirometer, Memorial Sloan
Kettering Cancer Center https://mskcc.org/canter-care/patient-education/how-use-your-
incentive-spirometer (last visited Mar. 18, 2021).

bumps. See ECF Nos. 132-133. Defendant argues that his alleged COVID-19 side effects are not well documented in medical records because he has difficulty expressing them "due to [a] language barrier," ECF No. 129 at 7, but this is insufficient to explain the evidentiary problem because Defendant presented his COVID-19 side effect allegations and argument in English clearly both to the Court in his supplemental filings and in three emails he sent to BOP medical personnel nearly five months after medical records noted his recovery from COVID-19 and starting one month before his first supplemental filing, see ECF Nos. 132-133. Although Defendant submits some photographs which demonstrate what appear to be the alleged rashes and bumps, see ECF No. 132, this Court does not find that these photographs combined with Defendant's allegations of other COVID-19 side effects show extraordinary and compelling circumstances favoring compassionate release when considered alone or in combination. See ECF No. 132-133.

This Court is sympathetic to Defendant's concern regarding COVID-19 reinfection because the CDC has reported that reinfection probability may "increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants." Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated Feb. 13, 2021). Although some courts have found that the "extraordinary and compelling reasons" threshold was satisfied by a defendant who tested positive for COVID-19, others have ruled the other way. Compare United States v. Pellegrino, 492 F. Supp. 3d 65, 2020 WL 5820325, at *3 (E.D.N.Y. Sept. 30, 2020) (finding that defendant who tested positive for COVID-19 met standard), and United States v. Graham, No. 16 Cr. 786-02 (NSR), 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020) (same), with United States v.

Marine-Adames, No. 19 Cr. 0010-1 (JS), 2021 WL 466034, at *3 (E.D.N.Y. Feb. 8, 2021)

(noting that defendant's positive test for COVID-19 "undermines his case for compassionate

release on the basis of his susceptibility to COVID-19 because the main point of releasing an

individual is to decrease the person's chance of contracting COVID-19") (citation omitted),

United States v. Riter, No. 18 Cr. 313 (JFK), 2020 WL 3428144, at *4 (S.D.N.Y. June 23, 2020)

(finding that defendant who tested positive for COVID-19 did not meet standard on that basis),

United States v. Zubkov, 460 F. Supp. 3d 450, 456-57 (S.D.N.Y. 2020) (same), and United

States v. Russo, 454 F. Supp. 3d 270, 279-80 (S.D.N.Y. 2020) (same).  Defendant has not

demonstrated that the steps taken by FCI Cumberland to halt the spread of the virus and treat his

COVID-19 infection were or are so insufficient to constitute extraordinary and compelling

circumstances favoring compassionate release.  In light of the increasing number of fully

vaccinated inmates and staff at FCI Cumberland and the fact that Defendant previously

contracted and recovered from COVID-19, it is reasonable to anticipate that Defendant's risk of

reinfection will be reduced.

As noted above, Defendant has retained Jack Donson ("Mr. Donson"), a former BOP

employee and founder of My Federal Prison Consultant, to support the instant motion.  ECF No.

131, generally.  Mr. Donson avers he was, among other things, a Correctional Treatment

Specialist for most of his 23 years with the BOP, and routinely managed a caseload of

approximately 150 individual inmates in minimum, low, medium, administrative, and witness

security units.[7]  Id. at 1-2.  Mr. Donson's primary points are 1) that Defendant's inmate

classification, (lack of) incident reports, and low risk for recidivism reflects that he would not be

a danger to the community, and 2) that he has adjusted well and his program participation has

---

[7] A full recitation of Mr. Donson's credentials may be found at ECF No. 131, 1-2.

been satisfactory.  Id., generally.  Although this Court appreciates Mr. Donson's opinion and expertise, as discussed below, they are unpersuasive as to the ultimate issue before this Court.

Mr. Donson first observes that a recent security classification form pertaining to Defendant lists him as having eight security points, which would ordinarily be commensurate with minimum security.  See ECF No. 131 at 3.  But for the gravity of Defendant's offenses and the resulting life sentence, Mr. Donson argues, Defendant would be placed in minimum or low security.  See id.  He further explains that Defendant "has incurred nine incident reports in nearly twenty-five years of incarceration. . . . Only one of th[ose] incident reports involved a greatest severity offense . . . for Possessing a Dangerous Weapon . . . in 2001."  Id. at 4.  Although Mr. Donson concedes he did not have the actual incident reports to review, he reports that the remaining eight incident reports were for minor offenses "such as refusing orders, insolence, failing to stand for count and giving/accepting money without authorization."  Id.  Defendant's recidivism risk, both generally and specific to violence, is classified as minimum, the lowest risk. Id. at 5.

Mr. Donson discusses the educational, work and therapeutic programs in which Defendant has participated.  Id.  Although he cautions that "[t]he education data transcript is not a comprehensive document[,]" that transcript reflects that Defendant participated in only the mandatory portion of General Educational Development (GED) instruction, voluntarily withdrew after meeting his requirements, and that he also completed a four-hour fitness program.  Id. According to BOP records, Defendant has been employed throughout his incarceration, "consistently earning good work reports."  Id. at 6.  He also completed the C.O.D.E. program in 2001, which Mr. Donson contends "is now known as 'Challenge' . . . . an intensive program for high security inmates designed to facilitate both favorable institutional adjustment and successful

reintegration to the community." Id.  Mr. Donson was not provided detailed Psychology Data System ("PDS") treatment notes to review, and so could only generalize that "typical course content includes groups in areas like Anger Management, Parenting, Criminal Thinking, Criminal Lifestyles, Pro-Social Values, Behavioral Therapy and Victim Impact." Id.

Although the Court notes that Defendant's good behavior is commendable, it does not constitute extraordinary and compelling reasons for early release.  Although Defendant's only incident report classified as "greatest severity" was approximately 20 years ago, in 2001, so, too, was his participation in the C.O.D.E. program, and his record does not show other programs completed since.  It is positive that Defendant reports he has "significantly contributed towards the rehabilitation of other inmates in peer-to-peer mentoring . . . by encouraging family and community ties through letters and phone calls." Id. 5-6.  These developments are not "extraordinary and compelling" reasons for early release, even in combination with the other reasons Defendant for which argues.  See also, e.g., Brooker, 976 F.3d at 237-238 ("Rehabilitation . . . alone shall not be considered an extraordinary and compelling reason.") (quoting 28 U.S.C. § 994(t)) (internal quotation marks omitted).

For these reasons, this Court respectfully recommends finding that Defendant failed to identify "extraordinary and compelling reasons" for his early release under the First Step Act.

### 3.    18 U.S.C. § 3553(a) Factors

Even if Defendant could establish "extraordinary and compelling reasons," this Court respectfully recommends denying Defendant's motion because the § 3553(a) factors weigh against a sentence reduction.  The relevant factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," (ii) the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the

public from further crimes of the defendant, and to provide the defendant with training, medical care or correctional treatment, (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (iv) the sentencing guidelines, and (v) "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

Defendant highlights his achievements while incarcerated: Defendant has availed himself of educational programs such as the C.O.D.E. program, has learned English through his interactions with other inmates and prison staff, has maintained employment as an orderly in his housing unit, has maintained a relatively clean prison record, and remains committed to rehabilitation.  See ECF No. 129 at 11.  Defendant's medical records also generally reflect his pleasant and cooperative interactions with BOP's medical personnel.  See, e.g., ECF No. 125-2 at 4, 78-82.  This Court commends Defendant on his commitment to rehabilitation.

Nonetheless, the nature and circumstances of Defendant's crimes weigh against release. Defendant was an officer of the Chinese Freemasons, an organized crime organization, and ran a gambling parlor for the organization.  See ECF No. 124 ¶ 56.  Defendant exercised his decision-making authority within the Chinese Freemasons to direct members to kidnap and kill Tak L. Chung, whom Defendant suspected of stealing from his gambling parlor.  See id. ¶¶ 28-42, 56. After trial, a jury found Defendant guilty of, inter alia, kidnapping and murder.  See ECF No. 61. These crimes are undeniably violent and grave.

The severity of Defendant's crimes is also highlighted by the sentencing guidelines calculations.  Defendant received a four-level enhancement to all counts of conviction due to his leadership in the criminal activity.  See ECF No. 124 ¶ 56.  Defendant also received a four-level enhancement to his convictions on Counts Three and Four because Tak L. Chung was abducted

to facilitate the robbery. See id. ¶ 57. Because Tak L. Chung was in possession of a firearm, which was taken by his abductors during the robbery, Defendant received an additional one-level enhancement. See id. The original offense level was 20 on Counts Three and Four relating to robbery; 43 on Counts Five and Six relating to traveling interstate with intent to commit a crime; 43 on Counts Seven and Eight relating to kidnapping; 43 on Counts Nine and Ten relating to murder; and no offense level on Count Eleven. See id. ¶¶ 64-89. Defendant's total offense level was 47. See id. ¶ 99.

The sentencing guidelines provided that the Court could impose a maximum imprisonment term of life on Defendant's conviction under Counts Six (travel in interstate commerce in aid of racketeering), Eight (kidnapping), and Ten (murder) pursuant to 18 U.S.C. § 1952(a)(2)(B) and 18 U.S.C. § 1959(a)(1). See id. ¶ 140. For Defendant's conviction under Count Eleven (use of a firearm during a crime of violence), 18 U.S.C. § 924(c) required the Court to impose a five-year term of imprisonment consecutive to any sentence imposed on Defendant's other convictions. See id. The Court ultimately sentenced Defendant to imprisonment for a term of life plus five years, to be followed by five years of supervised release. See ECF Nos. 81-82. That sentence reflects the seriousness of Defendant's offenses, affords adequate deterrence, and protects the public from further crimes by Defendant. Compassionate release at this time would undermine those goals.

This Court acknowledges that the holdings in Johnson v. United States, 576 U.S. 591 (2015) and United States v. Davis, 139 S. Ct. 2319 (2019), made subsequent to Defendant's conviction and sentencing in or around 1997, call into question whether Defendant's 18 U.S.C. § 924(c) conviction on Count Eleven remains valid. See Davis, 139 S. Ct. at 2336 (holding that Section 924(c)(3)(B) is unconstitutionally vague); Johnson, 576 U.S. at 597 (holding that

imposing an increased sentence under the residential clause of the Armed Career Criminal Act, Section 924(e)(2)(B), violates due process). Defendant's motion to vacate his 18 U.S.C. §§ 924(c) and (h) convictions pursuant to 28 U.S.C. § 2255 is currently pending before Judge Johnson. See ECF No. 114. This Court finds that the outcome of Defendant's motion, even if successful, would not constitute an "extraordinary or compelling reason" and would not change this Court's recommendation on this motion for compassionate release. Even assuming that Judge Johnson were to overturn Defendant's conviction on Count Eleven and decrease the length of Defendant's sentence by the five years previously mandated pursuant to § 924(c), Defendant's jury convictions of kidnapping and murder would still stand and still subject him to a maximum term of life imprisonment. See 18 U.S.C. § 1952(a)(2)(B); 18 U.S.C. § 1959(a)(1). That is, the gravity of Defendant's crimes, the goals of sentencing, and the sentences for the other Counts would remain unchanged.

Furthermore, Defendant is 62 years old and, since being remanded to federal custody on October 23, 1996, has served approximately 25 years of his life sentence.[8] Granting release to Defendant would place him on unequal footing with other defendants who are serving life sentences for violent crimes. See, e.g., United States v. Santos, No. 88 Cr. 642 (LAP), 2021 WL 738692, at *5-6 (S.D.N.Y. Feb. 25, 2021) (denying motion for compassionate release for 59-year old defendant serving a life sentence for, inter alia, conspiring and attempting to murder a federal officer); United States v. Rodriguez, No. 11 Cr. 755 (JFK), 2021 WL 37689, at *4 (S.D.N.Y. Jan. 4, 2021) (denying motion for compassionate release for defendant who served ten years of his life sentence for his, inter alia, kidnapping and Hobbs Act robbery convictions); United States v. Stanley, No. 98 Cr. 106 (JWD) (EWD), 2020 WL 6060877, at *3 (M.D. La. Oct. 14, 2020)

---

[8] Defendant was arrested on August 15, 1995. See ECF No. 124 ¶ 128.

(denying motion for compassionate release for defendant who "has only served about twenty-three years of a life sentence for an extremely serious crime"); United States v. Alvarez, No. 89 Cr. 229 (JS), 2020 WL 4904586, at * 7-8 (E.D.N.Y. Aug. 20, 2020) (denying motion for compassionate release for 55-year-old defendant who served 29 years of his four concurrent life sentences for, inter alia, committing a violent crime in aid of racketeering activity); United States v. Lika, No. 84 Cr. 499 (CS), 2020 WL 2766049, at *3 (S.D.N.Y. May 28, 2020) (denying motion for compassionate release for 70-year old serving sentence of 65 years plus a concurrent sentence of life imprisonment for his conviction for, inter alia, narcotics trafficking and murder); United States v. Gil, No. 90 Cr. 306 (KMW), 2020 WL 2611872, at *2 (S.D.N.Y. May 22, 2020) (denying motion for compassionate release for 70-year-old defendant serving life sentence for his conviction of conspiracy to distribute cocaine).

On this record, this Court finds that the § 3553(a) factors outweigh any extraordinary and compelling reasons that might support Defendant's release. Denial of Defendant's motion is therefore warranted. See, e.g., United States v. Rosa, 11 Cr. 569 (PAC), 2020 WL 6075527, at *3 (S.D.N.Y. Oct. 15, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons" because the § 3553(a) factors did not favor such relief).

For these reasons, this Court respectfully recommends finding that any reduction in Defendant's life sentence would be inconsistent with § 3553(a) and should therefore be denied.

## III.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that the Court deny Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant's age and underlying health issues, the conditions of his incarceration at FCI Cumberland and his experience with COVID-19 do not, alone or in combination, show "extraordinary and

compelling reasons" favoring compassionate release. Assuming <u>arguendo</u> that Defendant had established extraordinary and compelling reasons, Section 3553(a) factors would still militate against a sentence reduction.

## IV. OBJECTIONS

A copy of this report and recommendation is being provided to the Government via ECF. The Court will mail a copy to Defendant Court at Defendant Yick Man Mui, Register Number 31762-037, FCI Cumberland, Federal Correctional Institution, P.O. Box 1000, Cumberland, MD 21501. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge prior to the expiration of those fourteen (14) days. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review[.]").

Dated: Brooklyn, New York
      July 23, 2021

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

24