```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  UNITED STATES OF AMERICA

                  -against-                    MEMORANDUM & ORDER
                                                95-CR-766-1(EK)
  YICK MAN MUI,

                  Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Yick Man Mui filed a petition for collateral relief pursuant to 28 U.S.C. § 2255. Proceeding *pro se*, he contends that his conviction under 18 U.S.C. § 924(c) for using a firearm during a crime of violence should be vacated because the predicate offense can no longer be considered a crime of violence. Because granting Mui relief from this conviction would not change his aggregate sentence, I decline under the concurrent sentences doctrine to consider the merits of his petition.

## I. Background

In 1996, a jury convicted Mui of nine federal offenses, including murder, kidnapping, and interference with commerce by robbery; conspiracy to commit those offenses; and the 924(c) count referred to above. Judgment, ECF No. 82. The Honorable Sterling Johnson, Jr. sentenced Mui to a term of life plus five years of imprisonment. *Id.* The Second Circuit

affirmed the convictions. *United States v. Mui*, 159 F.3d 1349 (2d Cir. 1998) (unpublished table disposition).

The instant Section 2255 petition is Mui's second. As recounted in my previous Order, Mui filed his first motion in 1999, which Judge Johnson later denied. *See United States v. Mui*, No. 95-CR-766-1, 2023 WL 1354785, at *2 (E.D.N.Y. Jan. 31, 2023). The Second Circuit vacated and remanded for further proceedings in 2010. *Id.* After a hearing, Judge Johnson again denied the motion in 2013. *Id.* Upon this case being reassigned to me in 2022, I denied Mui's motion for reconsideration of that denial. *Id.*

Meanwhile, in 2016, Mui applied to the Second Circuit for leave to file a second 2255 petition. Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 111. He contended that his 924(c) conviction was no longer valid after the Supreme Court's holdings in *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019). *Id.* The Second Circuit granted leave in 2020. *Mui v. United States*, No. 16-2117 (2d Cir. Apr. 14, 2020), ECF No. 39. Mui then filed the petition in this court. Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 114. (Mui subsequently sought to withdraw his motion, then to undo that withdrawal. Upon reassignment to me, I granted Mui's request to undo the withdrawal of his motion. *Mui*, 2023 WL 1354785, at *2.)

In his petition, Mui attacks only one of his nine convictions — that for using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  Pet. 7, ECF No. 114.  Judge Johnson sentenced Mui to a term of 15 years' incarceration on that offense, to run consecutively to the sentences for his other eight convictions.  Judgment 2.  Those sentences included two life sentences for murder and kidnapping, respectively.  *Id.*

As the Second Circuit explained, Mui argues that his Section 924(c) conviction was "predicated on, inter alia, various conspiracy offenses" and therefore is "no longer valid under *Johnson* [*v. United States*, 576 U.S. 591 (2015)]."  159 F.3d at 1349.  The Second Circuit also "liberally construe[d] [Mui's] motion as being based on *United States v. Davis*, 139 S. Ct. 2319 (2019)."  *Johnson* and *Davis* principally held unconstitutional the imposition of an increased sentence under the residual clauses of the Armed Career Criminal Act and Section 924(c).  *Johnson*, 576 U.S. at 606; *Davis*, 139 S. Ct. at 2336.  Thus, I understand Mui to argue that not all of the predicate offenses for his Section 924(c) conviction are crimes of violence, which could undermine that conviction.[1]

---

[1] The Second Circuit also stated that Mui was challenging a conviction under 18 U.S.C. § 924(h), which proscribes transferring or receiving a firearm knowing that it would be used to commit certain crimes.  However, the

## II. Discussion

### A.  The Concurrent Sentence Doctrine

Under 28 U.S.C. § 2255, a federal prisoner may make a second or successive motion to vacate his sentence based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  The appropriate appellate court must certify that the motion is based on such a rule.  *Id.* § 2255(h).  The Second Circuit did so here.  *See Mui*, No. 16-2117 (slip op. at 1) ("Petitioner has made a *prima facie* showing that the proposed § 2255 motion satisfies the requirements of § 2255(h).").[2]

However, this court need not reach the merits of Mui's motion, given the applicability of the "concurrent sentence doctrine."  That doctrine is a "rule of judicial convenience" that was "originally formulated with respect to direct appeals."  *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021).  Subsequently extended to collateral review, it accords a reviewing court the discretion "to avoid reaching the merits of a claim altogether in the presence of identical concurrent

---

judgment in this case indicates that Mui was not convicted under Section 924(h).

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

sentences," given that a decision in the petitioning party's favor would have no impact on his release date. *Id.*

Recently, in *Al-'Owhali v. United States*, the Second Circuit extended this doctrine to cover "a collateral challenge to a conviction for which the sentence runs *consecutively* to one or more unchallenged life sentences." 36 F.4th 461, 467 (2d Cir. 2022) (emphasis added). In these situations, a court may "apply the doctrine when . . . (1) the collateral challenge will have no effect on the time the prisoner must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences." *Id.*

Thus, in spite of its name, the concurrent sentence doctrine may in some cases be applied where the sentences run consecutively. For instance, in *Kassir*, the Second Circuit declined to consider the merits of the petitioner's challenge to a consecutive sentence. The petitioner had been sentenced to 264 concurrent life sentences for convictions relating to his role in the 1998 bombing of the United States Embassy in Nairobi, Kenya. 36 F.4th at 463-64. He did not challenge any of those sentences. *Id.* at 463. The petitioner was also sentenced to a 10-year consecutive sentence for using an explosive device during a crime of violence, also in violation of Section 924(c), which he did challenge. *Id.* at 464. Because the Second Circuit determined that no adverse collateral

5

consequences would stem from the unreviewed conviction, it declined to review the merits of the petitioner's claim under the concurrent sentence doctrine.  *Id.*

Since *Al-'Owhali*, at least two district judges in this Circuit have declined to review the merits of Section 2255 claims under the concurrent sentence doctrine.  In *Rahimi v. United States*, the Honorable Richard M. Berman declined to review the petitioner's challenge to two consecutive sentences — for 30 years and for life — where he did not challenge three separate life sentences that he had begun serving.  No. 16-CR-0760, 2023 WL 2136421, at *1, *3 (S.D.N.Y. Feb. 21, 2023.  Similarly, in *United States v. Krasniqi*, the petitioners had been sentenced to five life sentences relating to their organized-crime activities, which included murder in aid of racketeering.  *United States v. Krasniqi*, No. 10-CR-464, 2022 WL 1739142, at *1 (S.D.N.Y. May 31, 2022), *report and recommendation adopted,* 2022 WL 2663826, at *3.  The Honorable Gregory H. Woods declined to review the petitioners' challenge to their 25-year consecutive sentences, corresponding to their convictions for use or possession of a firearm during and in furtherance of kidnapping.  *Id.* at *3.

Nevertheless, the concurrent sentence doctrine is a "discretionary doctrine rooted in judicial convenience," and therefore its application is not mandatory.  *Kassir*, 3 F.4th at

568. A court may address the merits of a petition, even where the doctrine is available, if it finds that a decision on the merits is "warranted and preferable." *Kassir*, 3 F.4th at 568.

**B. Analysis Under the Concurrent Sentence Doctrine**

Here, I find that the concurrent sentence doctrine applies. As noted, Mui does not challenge his concurrent life sentences for murder and kidnapping. Thus, "even a complete vacatur of [Mui's] § 924(c) conviction will not reduce the time he serves in prison" and thus "will not afford him any actual sentencing relief." *Kassir*, 36 F.4th at 463. The concurrent sentence doctrine therefore applies if no additional adverse collateral consequences would flow from Mui's Section 924(c) conviction.

In determining whether such consequences exist, "courts may look to the so-called *Vargas* factors." *Kassir*, 3 F.4th at 568. Those factors were first set forth by the Second Circuit in *United States v. Vargas*, 615 F.2d 952, 959 (2d Cir. 1980). As more recently restated by that court, they are: (1) "the unreviewed conviction's effect on the petitioner's eligibility for parole"; (2) "the future application of recidivist statutes for a future offense by the petitioner"; (3) "the petitioner's credibility in future trials"; (4) "the possibility of pardon"; and (5) "societal stigma of a conviction." *Al-'Owhali*, 36 F.4th at 468; *accord Kassir*, 3

7

F.4th at 568. "The presence of any factor is sufficient to justify review." *Al-'Owhali*, 36 F.4th at 468.

None of the *Vargas* factors favor relief here.

*First*, the Section 924(c) conviction has no effect on Mui's future eligibility for parole. "[T]here is no parole in the federal system," and therefore a federal life sentence "is effectively the same as a life-without-parole sentence in state court systems." *United States v. Delgado,* 971 F.3d 144, 159 (2d Cir. 2020). For purposes of the concurrent sentence doctrine, then, "the unreviewed conviction will have no effect on [Mui's] future parole eligibility." *Al-'Owhali*, 36 F.4th at 468; *see also Kassir*, 3 F.4th at 568 ("Our reservation of judgment cannot affect Kassir's future eligibility for parole since there is no parole in the federal system.").

*Second*, because Mui "is already in prison for life," "it is unlikely that [he] will be subject to a recidivist statute for a future offense, such that the unreviewed conviction could result in an increased sentence." *Al-'Owhali*, 36 F.4th at 468; *see also Kassir*, 3 F.4th at 568 ("Because Kassir will be in prison for the rest of his life, it is hard to imagine how he might ever face the prospect of an increased sentence under a recidivist statute for a future offense.").

*Third*, Mui's Section 924(c) conviction "is unlikely to be used to impeach his character at a future trial," *Al-'Owhali*,

8

36 F.4th at 468, because he remains convicted for eight far more serious crimes, including murder and kidnapping.  The Second Circuit found this factor to weigh against the petitioner where he "remain[ed] convicted on 265 other counts for his role in the Nairobi bombing."  *Id.*  Similarly, in *Krasniqi*, the district court found this factor to weigh against petitioners, given their unchallenged convictions for (among other things) two murders in aid of racketeering.  2022 WL 1739142, at *8 ("Especially in light of the Krasniqis' other convictions, it is difficult to imagine that the Krasniqis' convictions under 18 U.S.C. § 924(c) would be used to impeach their character at a future trial . . . .").

*Fourth*, Mui's Section 924(c) conviction also is "unlikely to . . . affect his chances for a potential pardon."  *Al-'Owhali*, 36 F.4th at 468.  Courts analyze this factor in a similar manner as with the third factor and weigh it against the petitioner where he remains convicted for multiple other serious crimes.  *See id.*; *Krasniqi*, 2022 WL 1739142, at *8.  Because Mui would remain convicted of serious crimes including murder and kidnapping, the presence or absence of his firearm conviction is unlikely to move the needle meaningfully in any pardon application.

*Finally*, Mui's firearms conviction is "unlikely to submit [him] to a societal stigma."  *Al-'Owhali*, 36 F.4th at

9

468. The Second Circuit has evaluated this factor based on a comparison between the crime of the unreviewed conviction and those of the remaining, unchallenged convictions. For instance, in *Al-'Owhali*, that court observed that "the unreviewed [Section 924(c)] conviction is unlikely to subject [the petitioner] to a societal stigma, especially in comparison to the stigma already carried by his unchallenged convictions for engaging in terrorism that killed over 200 people." 36 F.4th at 468; *see also Kassir*, 3 F.4th at 568 ("[A]ny societal stigma associated with his § 842(p) conviction — especially in comparison to the stigma already carried by his conviction for support of terrorism and conspiracy to kill — provides little ground for concern about adverse effects."). Judge Woods did the same in *Krasniqi*, observing that the petitioners' "other convictions, which . . . include two murders committed in aid of racketeering, . . . render it unlikely that [they] will face a heightened societal stigma specifically as a result of their convictions under section 924(c)." 2022 WL 2663826, at *2. The same is true here as well: the societal stigma that attaches to a Section 924(c) conviction, serious though that crime is, surely pales in comparison to Mui's convictions for the far more serious crimes of murder and kidnapping.

In sum, none of the *Vargas* factors precludes application of the concurrent sentence doctrine. Additionally,

a decision on the merits is not "warranted and preferable." *Kassir*, 3 F.4th at 568. I therefore decline to review Mui's motion on the merits.

**C. Leave to Amend**

Since receiving permission from the Second Circuit to file his second, successive Section 2255 petition, Mui has also filed motions with this court that either expressly or implicitly request to add claims to the petition. These claims include (as styled by Mui): ineffective assistance of counsel;[3] improper translation;[4] violation of the *Ex Post Facto* Clause;[5] improper jury instructions;[6] lack of venue;[7] improper waiver of the Fifth Amendment right to remain silent;[8] failure to receive Jencks Act material;[9] *Brady* violations;[10] amendment of the

---

[3] *See* Def.'s Mot. to Amend/Correct, Vacate, ECF No. 156; Def.'s Mot. for New Trial, ECF No. 162; Def.'s Mot. to Compel, ECF No. 169; Def.'s Mot. for Relief, ECF No. 177.

[4] *See id.*

[5] *See* Def.'s Mot. to Vacate, ECF No. 159; ECF No. 162; Def.'s Mot. to Amend/Correct, ECF No. 173; ECF No. 177.

[6] *See* ECF No. 159; ECF No. 162; Def.'s Mot. to Dismiss, ECF No. 176; ECF No. 177. Mui's objection to the jury instructions relates in part to the 924(c) count. Accordingly, the concurrent sentences doctrine applies to this putative claim as well.

[7] *See* ECF No. 162; ECF No. 177.

[8] *See* ECF No. 162; ECF No. 169.

[9] *See* ECF No. 162; ECF No. 169; Def.'s Mot. to Vacate, ECF No. 174.

[10] Def.'s Mot. for Order to Show Cause, ECF No. 167; ECF No. 169; Def.'s Mot. to Compel, ECF No. 172; ECF No. 174; ECF No. 177.

11

superseding indictment without resubmission to the grand jury;[11] lack of jurisdiction;[12] violation of the Double Jeopardy Clause;[13] and violation of the Confrontation Clause.[14]

Additionally, on October 4, 2023, Mui moved the Second Circuit for leave to file a third Section 2255 motion. *See* Mot. to File a Successive Pet., Case No. 23-7256, ECF No. 1.1. On November 27, 2023, the panel denied Mui's motion, noting that "if a § 2255 motion is already pending in district court . . . the movant may seek to amend that motion to add claims without first requesting leave of this Court." Mot. Den. Leave to File Successive Mot., Case No. 23-7256, ECF No. 13.1. Thus, Mui's "current proposed § 2255 motion is better construed as a motion to amend the pending § 2255 motion . . ." *Id.*

I construe Mui's several motions to add additional claims as seeking leave to amend his second Section 2255 petition. The decision to grant leave to amend a Section 2255 petition is committed to the discretion of the district court. *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002). The Second Circuit has held that the trial court's discretion "safeguards against the possibility that Rule 15's

---

[11] *See* ECF No. 176; ECF No. 177.

[12] *See id.*

[13] *See* ECF No. 177.

[14] *See id.*

amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ" by, for example, "piecemeal litigation." *Ching*, 298 F.3d, 179-80 (2d Cir. 2002). Furthermore, while district courts often grant leave to amend, when amendment would be futile, courts may deny leave. *Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir. 1999).

Leave to amend the instant Section 2255 petition is denied. The new motions would add claims unrelated to the limited purpose for which Mui was granted the opportunity to file the instant petition. Moreover, for a Section 2255 petition to survive dismissal in district court, the applicant must show that the claims meet the standards set out in 28 U.S.C. § 2255(h), a step beyond the *prima facie* showing required at the Circuit Court for leave to file the petition. *Tyler v. Cain,* 533 U.S. 656, 661 n.3 (2001). Of Mui's proposed additions, none is predicated on the discovery of new evidence or the adoption of a new rule of constitutional law (apart from the Supreme Court's 924(c) rulings in *Johnson* and *Davis*, which Mui also invokes in connection with his objection to Judge Johnson's jury instructions). Thus, he cannot satisfy Section 2255(h), and the proposed amendments would thus be futile. *See Jones v. Hendrix*, 599 U.S. 465, 490 (2023) (limiting successive

13

Section 2255 petitions to the two exceptions outlined in 28 U.S.C. § 2255(h)).

First, with respect to Mui's claims regarding new evidence, all potential novel evidence discussed is decades old. Mui's claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), involves the plea allocation of Kin Man Yu, who transported the victim Mui allegedly directed be killed. Mui asserts that Yu's statement, which he did not have access to at trial because it occurred after the verdict, would have demonstrated that he did not order the victim's murder. *See e.g.*, ECF No. 167.

While Mui insists that this claim is based on newly discovered evidence, that "evidence" is a transcript of a 1998 guilty plea hearing. *See* ECF No. 174 (citing Tr. for Pleading, Case No. 97-CR-102, ECF No. 26). And generally speaking, "evidence is not newly discovered if it was available on a public docket and therefore could have been discovered with due diligence." *Martino v. Seterus, Inc.*, No. 17-CV-1326, 2018 WL 11453750, at *2 (D. Conn. June 20, 2018) (Hall, J.) (collecting cases).

Perhaps more importantly, Yu's allocution is not *Brady* material. Following the initial plea colloquy, the Assistant U.S. Attorney stated that the allocution could be insufficient to establish that Yu acted intentionally in respect of the homicide. *See* ECF No. 174 at 23 (AUSA states that "all he's

14

talked about is what they did," not the defendant's mental state).  Mui argues (without specifics) that the AUSA's comment demonstrates Mui's innocence and that Yu's plea "clearly contradicts" — in some unspecified way — the testimony of government witnesses who testified at his trial.  *See* ECF No. 169; ECF No. 172.

The transcript does not support these contentions.  Immediately following the AUSA's comment, the presiding magistrate judge asked Yu: "Did you know at the time you drove the car that the deceased was going to be killed?"  ECF No. 174.  Yu replied that he did believe that the victim would be killed, and the magistrate judge recommended that Judge Johnson accept the plea.  *See id*.  Yu did not explicitly address Mui's culpability one way or the other during the plea hearing.  *See id.*  The omission to provide Mui with this transcript therefore was not "suppression by the prosecution of evidence favorable to an accused."  *Brady*, 373 U.S. at 87.

Mui's remaining motions for leave to amend deal with long-settled constitutional principles rather than a new, retroactively applicable rule of constitutional law.  The latter is required for leave to file a second or successive Section 2255 petition.  *See* 28 U.S.C. 2255(h)(2).  Leave to amend cannot be granted for claims that would be impermissible in the petition itself.

15

Thus, Mui is denied leave to amend his Section 2255 petition as requested in ECF No. 156; ECF No. 159; ECF No. 161; ECF No. 162; ECF No. 167; ECF No. 169; ECF No. 172; ECF No. 173; ECF No. 174; ECF No. 176; and ECF No. 177.

### III. Conclusion

For these reasons, Mui's Section 2255 motion to vacate his Section 924(c) conviction is denied.  Additionally, Mui is denied leave to amend his petition.  No certificate of appealability shall issue because Mui has not made a substantial showing that he was deprived of any constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

The court certifies that any appeal of this order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

                                                      /s/ Eric Komitee
                                                      ERIC KOMITEE
                                                      United States District Judge

Dated:    April 9, 2024
           Brooklyn, New York